UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>— against —<br><br>CORNALIOUS COOPER,<br><br>Defendant. | 19-cr-159 (ARR)<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

On August 1, 2019, defendant Cornalious Cooper, through counsel, made an oral motion to suppress post-arrest oral and written statements that he gave to federal law enforcement officers. On August 13, 2019, Cooper submitted a written motion to suppress those statements and requested an evidentiary hearing. The government opposes the motion and the request for a hearing. For the reasons set forth below, Cooper's motion is denied, and I decline to hold an evidentiary hearing.

## BACKGROUND

The government alleges that on the night of January 22, 2019, defendant Cornalious Cooper was driving on the Belt Parkway at a rate of speed exceeding 100 miles per hour. *See* Compl. ¶ 3, ECF No. 1; Gov't Resp. in Opp'n to Def.'s Mot. to Suppress 1, ECF No. 25 ("Gov't Resp."). U.S. Park Police Officer Robert O'Brien noticed Cooper and began to follow him. *See* Gov't Resp. 1. Cooper exited the parkway and stopped behind a stationary vehicle, which had stopped for a red light. *See* Compl. ¶ 4; Gov't Resp. 1. O'Brien pulled up next to Cooper's car and ordered Cooper to turn off his engine and show the officer his hands. Gov't Resp. 1. When Cooper did not comply, O'Brien left his vehicle, walked directly in front of Cooper's car, and again

1

directed Cooper to raise his hands. *See id.* at 1–2. Cooper's car then "lurched forward," prompting O'Brien to draw his firearm. *Id.* at 2. Cooper accelerated, striking O'Brien's leg and running over his foot. *Id.* O'Brien was not injured. *Id.*

Two weeks later, on February 6, 2019, New York Police Department officers arrested Cooper on an unrelated state charge. *See* Def.'s Mot. to Suppress 2, ECF No. 24 ("Def.'s Mot."). An attorney represented Cooper at his arraignment on this state charge the following day, February 7. *See* Decl. of Cornalious Cooper Def.'s Ex. A ¶ 4, ECF No. 26-1 ("Cooper Decl."). Immediately after Cooper's arraignment and release on the state charge, at about 9:30 a.m., federal officers arrested Cooper for violating 18 U.S.C. §§ 111(a)(1) (assaulting, resisting, opposing, impeding, intimidating, or interfering with certain officers or employees) and 111(b) (same, using a deadly or dangerous weapon). *See* 18 U.S.C. §§ 111(a)(1), 111(b) (2018); Gov't Resp. 2; Cooper Decl. ¶ 6. The federal officers brought Cooper to the United States District Court for the Eastern District of New York in Brooklyn where they interviewed him before his federal arraignment. *See* Gov't Resp. 2–3.

According to Cooper's declaration in support of the instant motion, during that interview, two or more law enforcement officers questioned him about the events of January 22.[1] Cooper Decl. ¶ 7–8. The officers informed Cooper that they had his phone and that telling them what happened would help his case. *Id.* at ¶ 8. Cooper also states that the officers told him that they could confiscate his vehicle if he did not tell them what happened. *Id.* Cooper relates that he answered the officers' questions and that the officers then asked him to write down what he had told them, which Cooper proceeded to do. *See id.* at ¶¶ 9–10. Based on the times indicated on

---

[1] Cooper has not submitted a signed copy of his declaration but, according to defense counsel, has reviewed the declaration and confirmed its accuracy and truthfulness. For the purposes of the instant motion, I will proceed as if Cooper had signed the declaration.

Cooper's waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), *see* Miranda Card Def.'s Ex. B, ECF No. 26-2 ("Miranda Card"), and on Cooper's written statement, *see* Written Statement of Cornalious Cooper Def.'s Ex. B, ECF No. 26-2 ("Cooper W.S."), it is undisputed that Cooper received and waived his *Miranda* rights at 12:04 p.m. and completed his written statement at 12:37 p.m. Thus, the entire interview lasted thirty-three minutes.

In his handwritten statement, Cooper recounted the events of January 22. *See* Cooper W.S. In his declaration in support of this motion, Cooper avers that when he wrote that statement, he had not slept or eaten in over twenty-four hours. Cooper Decl. ¶ 10. Critically, Cooper does not allege that he ever related this information to the interviewing federal officers or in any way indicated to them that he was hungry or tired. *See* Cooper Decl.

The government acknowledges that an officer told Cooper that officers had seized Cooper's phone and that cooperation would be in Cooper's best interest. *See* Gov't Resp. 2. The government adds, and Cooper does not dispute, that the officers told Cooper "that they could get incriminating evidence from his phone and social media." Gov't Resp. 2. The officers who interviewed Cooper do not recall that Cooper ever asked them for food or water or in any way indicated that he lacked sleep. *See* Gov't Resp. 3. Thus, the only fact that the government and Cooper dispute on this motion involves the remark that Cooper claims the officers made about his car: specifically, the government denies that the officers told Cooper that they could confiscate his vehicle if he did not make a statement. *See* Gov't Resp. 2.

## DISCUSSION

As discussed below, fully accepting all aspects of Cooper's view of the facts for purposes of this motion, I nonetheless conclude that his post-arrest oral and written statements were voluntarily made. Accordingly, I deny his motion to suppress and do so without conducting a

hearing, as the defendant has failed to raise any material evidentiary dispute warranting such relief.[2]

   I.   **Cooper gave his statements voluntarily**

A criminal conviction founded upon an involuntary confession deprives the defendant of due process of law. *See Jackson v. Denno*, 378 U.S. 368, 376 (1964). Thus, a criminal defendant's post-arrest statement is inadmissible in evidence if the defendant gave the statement involuntarily. *See Dickerson v. United States*, 530 U.S. 428, 433–34 (2000). This voluntariness requirement exists separately from the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 436 (1966). *See United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014). Accordingly, even if a defendant knowingly and voluntarily waives his *Miranda* rights, he must also give any post-arrest statements voluntarily in order for them to be admissible. *See id.*

If law enforcement officers obtain a post-arrest statement "under circumstances that overbear the defendant's will at the time it is given," the statement is not voluntary. *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). To determine whether a defendant gave a statement voluntarily, I must evaluate "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *Id.* However, "police overreaching" is a "crucial element" in the voluntariness analysis. *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164. Thus, "coercive police activity is a necessary predicate to finding that a confession is not 'voluntary.'" *Id.* at 167. While the defendant's mental condition

---

[2] In Cooper's oral motion, defense counsel also alluded to a potential *Miranda* violation. However, Cooper has not raised a *Miranda* claim in his subsequent motion papers. Accordingly, I assume that Cooper has elected not to pursue a *Miranda* claim and do not address the issue.

is a factor in the voluntariness analysis, it is not, "by itself and apart from its relation to official coercion," dispositive. *Id.* at 164. Finally, the government bears the burden to "prove at least by a preponderance of the evidence that [a] confession was voluntary." *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

Here, Cooper and the government present largely consistent accounts of the circumstances that surrounded Cooper's interview with law enforcement officers. The parties agree that federal officers took Cooper into custody immediately following his arraignment in state court. *See* Gov't Resp. 2; Cooper Decl. ¶ 6. Cooper claims that at the time of his statements, he had not eaten or slept for more than twenty-four hours. Cooper Decl. ¶ 10. The government does not deny this claim but accurately notes that Cooper failed to allege that he ever asked the officers for food or water or in any way indicated to them that he was in need of sleep. *See* Gov't Resp. 3. Cooper further asserts, and the government does not deny, that an attorney represented him at his arraignment in state court and that the federal officers did not confer with that attorney before questioning Cooper regarding the alleged federal offenses. *See* Gov't Resp. 5; Def.'s Mot. 3–4. The parties are also in agreement that the federal officers told Cooper that they had taken his phone and that Cooper's cooperation with them would help his case. *See* Gov't Resp. 2; Cooper Decl. ¶ 8.

Thus, as noted above, the only dispute between Cooper and the government concerning any aspect of the circumstances surrounding Cooper's statements involves his claim regarding the officers' threatened confiscation of his car. Specifically, Cooper claims that the officers told him

that they "could" confiscate his car if he did not cooperate with them. Cooper Decl. ¶ 8. The government denies that the officers ever made such a statement.[3] Gov't Resp. 2.

On this record, I am persuaded that the government has satisfied its burden to show that, given the totality of the circumstances, Cooper made his statements voluntarily and not because law enforcement officers overbore his will.

First, it is undisputed that Cooper's interview was a brief one, lasting only slightly over half an hour and culminating in a statement that Cooper himself wrote. The brevity of the interview, concluding in Cooper's written statement, militates strongly in favor of finding that Cooper gave the statements voluntarily. *See United States v. Haak*, 884 F.3d 400, 415–16 (2d Cir. 2018) (finding defendant gave statement voluntarily when interview lasted only slightly longer than half an hour and other circumstances surrounding interrogation did not suggest coercion); *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir. 1987) (upholding finding that confession was voluntary when interview lasted approximately two and a half hours); *United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 51 (2d Cir. 1975) (finding confession voluntary when interrogation lasted seven or eight hours and interrogators did not otherwise overbear defendant's will), *overruled on other grounds by Cruz v. New York*, 481 U.S. 186 (1987); *United States ex rel. Liss v. Mancusi*, 427 F.2d 225, 230 (2d Cir. 1970) (finding confession voluntary when questioning lasted three and a half hours and atmosphere was not otherwise coercive); *United States ex rel.*

---

[3] In his reply brief, Cooper argues that he has raised a factual dispute involving the timing of his written statement and any preceding oral conversation with the officers. *See* Def.'s Reply to Gov't Resp. 1–2, ECF No. 26. However, in his declaration, Cooper states that he wrote his statement at approximately 12:00 p.m., which aligns with the 12:04 p.m. start time indicated on the written statement itself. *See* Cooper Decl. ¶ 10; Cooper W.S. In any case, Cooper has not explained how, if at all, any dispute as to the time at which Cooper began writing his statement would change the voluntariness analysis, nor has he alleged that his interview lasted meaningfully longer than the thirty-three minutes indicated on the written statement. Accordingly, I do not treat Cooper's suggestion as a dispute of fact.

*Coleman v. Mancusi*, 423 F.2d 985, 986–87 (2d Cir. 1970) (upholding on habeas review a finding that confession was voluntary after six-hour interrogation); *United States v. Campo Flores*, No. S5 15 Cr. 765 (PAC), 2016 WL 5946472, at *9 (S.D.N.Y. Oct. 12, 2016) (finding statements voluntary when given after interrogations that lasted two and a half hours and one hour).

Second, Cooper received and waived his *Miranda* rights immediately before he gave his statements, and he does not claim that his waiver was involuntary. *See* Miranda Card. While a knowing and voluntary *Miranda* waiver does not necessarily indicate that a subsequent confession was voluntary, *see Taylor*, 745 F.3d at 23, it does show that Cooper knew that he had the right to remain silent and nonetheless opted to make statements. Thus, Cooper's voluntary *Miranda* waiver is another factor in the totality of the circumstances that weighs in favor of finding his statements voluntary. *See Oregon v. Elstad*, 470 U.S. 298, 318 (1985) (acknowledging that suspect's choice to speak after receiving *Miranda* warnings is highly probative of voluntariness); *see also Guarno*, 819 F.2d at 31 (upholding finding of voluntary confession when defendant was aware of right to remain silent at interview).

Third, although Cooper asserts that he had not slept or eaten in over twenty-four hours when he gave his oral and written statements, he makes no claim that he asked the officers for food, complained of food or sleep deprivation, or at any time communicated a weakened condition to them. Because of the complete absence of any indication that the officers withheld food or sleep from Cooper or had any reason to know of his condition, Cooper's assertion that he had not slept or eaten in over twenty-four hours does not itself weigh against a finding that his statements were voluntary. It is true that under *Connelly*, the defendant's mental condition—in this case, hungry and tired—is one factor in the voluntariness analysis. *See* 479 U.S. at 164. However, a defendant's weakened state does not, without more, render a confession involuntary. *See id.* at 164. Rather, the

officers must have engaged in "coercive police activity" that was "causally related to the confession." *Id.* at 164, 167. Crucially, Cooper fails to allege that the federal officers engaged in any coercive activity by which they denied him food or sleep in order to extract a confession. Instead, Cooper merely relates that when he wrote his statement, he "had not slept or eaten in over 24 hours." Cooper Decl. ¶ 10. This allegation, without an additional claim that Cooper alerted the officers to his condition, is insufficient to warrant a finding that the officers overbore Cooper's will. *See Stanbridge*, 514 F.2d at 47, 51 (finding confession voluntary when defendant claimed deprivation of food and sleep during seven- or eight-hour interrogation but did not claim that he asked for food or drink); *Coleman*, 423 F.2d at 986–87 (upholding on habeas review a finding that confession was voluntary when defendant did not ask for food or drink); *United States v. DiLorenzo*, No. S1 94 Cr. 303 (AGS), 1995 WL 366377, at *8 (S.D.N.Y. June 19, 1995) ("[A] claim that a defendant was exhausted . . . is not, in the absence of coercive law enforcement activity, sufficient to characterize his confession as involuntary.").

Similarly, Cooper makes no claim that the officers exploited his condition. *See Taylor*, 745 F.3d at 25 (finding statement involuntary because officers took advantage of defendant's sleep deprivation by persistently questioning him as he drifted in and out of consciousness, or entered trance or stupor, while giving statement). Nor did the officers subject Cooper to a long interrogation that would have necessitated breaks for food and sleep. *See United States ex rel. Lewis v. Henderson*, 520 F.2d 896, 901–02 (2d Cir. 1975) (finding that lack of *Miranda* warnings, thirty-eight-hour detention with continuous overnight interrogation, little food or sleep, and isolation would render statement involuntary if proven); *United States ex rel. Burns v. LaVallee*, 436 F.2d 1352, 1355–56 (2d Cir. 1970) (finding statement involuntary after eighteen-hour interrogation when defendant had not slept and had barely eaten for thirty hours). Thus, accepting

8

Cooper's assertion that he had not eaten or slept for twenty-four hours when he gave his statements, absent any suggestion that the federal officers exploited his condition to extract a confession, Cooper's condition provides no basis to find his statements involuntary.

Fourth, the fact that an attorney represented Cooper at his arraignment on his state charge, and that the federal officers did not consult with this attorney, has no bearing on the voluntariness of the statements that Cooper gave to the federal officers regarding an unrelated charge after his release from state custody. Cooper waived his right to have counsel present during his interview with the federal officers, and he does not claim that this waiver was involuntary. *See* Miranda Card. While the absence of counsel during questioning may, under different circumstances, suggest that the unrepresented suspect made a statement involuntarily, the knowing and voluntary waiver of *Miranda* rights militates in favor of finding a statement voluntary. *See Green v. Scully*, 850 F.2d 894, 902–04 (2d Cir. 1988) (noting significance of absence of counsel in voluntariness analysis but finding statement voluntary when defendant received *Miranda* warnings, stated he would answer questions without attorney, and did not claim he lacked understanding of *Miranda* rights). Further, by failing to consult with Cooper's state-court attorney, the federal officers did not violate Cooper's Sixth Amendment right to counsel, which is offense-specific. *See United States v. Allen*, 169 F. App'x 634, 637 (2d Cir. 2006) (holding that defendant's appearance with counsel at arraignment on separate state charges did not trigger Sixth Amendment right to counsel with respect to federal charges because that right is offense-specific).

Fifth, it is undisputed that the federal officers told Cooper that his cooperation would be in his best interest and that they had taken his phone. These statements do not indicate that the officers overbore Cooper's will. Cooper relates that the officers "told [him] . . . that telling them what happened would help [his] case." Cooper Decl. ¶ 8. The officers thereby accurately conveyed a

9

fact about how the criminal-justice system operates and did not coerce Cooper into confessing. *See United States v. Ruggles*, 70 F.3d 262, 264–65 (2d Cir. 1995) (upholding finding that statement was not coerced when officer told defendant that cooperating would benefit him because officer merely conveyed factual observation); *see also Green*, 850 F.2d at 901 ("[T]he presence of a direct or implied promise of help or leniency alone has not barred the admission of a confession where the totality of the circumstances indicates it was the product of a free and independent decision."). Cooper does not claim that the officers made an unfulfillable promise or a misrepresentation. *See United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002) (stating that unfulfillable promises and certain misrepresentations might favor finding involuntariness but that "vague promises of leniency" in exchange for cooperation generally do not). Nor does Cooper claim that the officers promised him immunity. *See Haak*, 884 F.3d at 413 (finding no coercion when detective did not "communicate[] a clear and unmistakable promise of immunity in return for cooperation."). Accordingly, the officers' statement regarding cooperation does not call for a finding that Cooper gave his statements involuntarily. As for Cooper's claim that the officers "told [him] among other things that they had [his] phone," Cooper Decl. ¶ 8, Cooper has not explained how this statement amounts to coercion. The government adds, and Cooper does not dispute, that the officers told Cooper "that his phone had been seized and that they could get incriminating evidence from his phone and social media." Gov't Resp. 2. Here again, the officers accurately conveyed a fact and did not coerce Cooper. *See Ruggles*, 70 F.3d at 264–65.

Finally, the only fact that Cooper and the government dispute involves the remark that Cooper claims the officers made about his car: Cooper claims that the officers told him "that they could confiscate [his] vehicle, if [he] did not tell them what happened," Cooper Decl. ¶ 8, while the government denies that the officers made such a remark, *see* Gov't Resp. 2. Accepting

10

Cooper's view of the facts as true, this remark does not weigh in favor of finding his statements involuntary. Courts have considered similar and more threatening comments and found them uncoercive. *See Tavarez v. New York*, No. 07 Civ 8673(NRB), 2008 WL 2775810, at *2, *5 (S.D.N.Y. July 14, 2008) (upholding on habeas review a finding that statement was voluntary when detective said she would report defendant's car as stolen, making any family member or friend found driving it subject to arrest); *United States v. Rosado*, No. 93 Cr. 785 (RPP), 1994 WL 285878, at *4–*5 (S.D.N.Y. June 28, 1994) (finding statement voluntary when defendant claimed, and government did not deny, that federal officers said they would return defendant's seized car to him if he answered questions); *see also United States v. Rodebaugh*, 798 F.3d 1281, 1291–93 (10th Cir. 2015) (finding defendant's will not overborne when agents interviewed him for three to four hours and threatened to take his house and all property unless defendant cooperated). Moreover, even if the officers' comment about Cooper's car were viewed as a potentially coercive circumstance, the undisputed record regarding all of the other circumstances surrounding Cooper's post-arrest statements nonetheless establishes that in the totality of the circumstances, Cooper's statements were voluntarily made.

**II.    Cooper has not raised an issue of fact sufficient to warrant an evidentiary hearing**

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (quoting *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). The defendant bears the "initial burden to allege sufficient facts which, if proven, would require granting the motion." *United States v. Calvente*, No. S3 12 Cr. 732(WHP), 2013 WL 4038952, at *2 (S.D.N.Y. July 26, 2013) (citing *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969)).

"Mere conclusory allegations generally do not meet that burden." *Calvente*, 2013 WL 4038952, at *2; *see also United States v. Cook*, 348 F. Supp. 2d 22, 27 n.3 (S.D.N.Y. 2004) (finding suppression hearing unwarranted when defendant's only alleged fact would not have required suppression if true).

Here, the only contested issue of fact is the dispute between Cooper and the government regarding whether the officers told Cooper that they could confiscate his car if he did not cooperate. As discussed, accepting Cooper's claim—that the officers did, in fact, make this remark—as true, Cooper's statements would nonetheless be voluntary under the totality of the circumstances. Thus, Cooper has not met his initial burden to allege sufficient facts that, if proven at a hearing, would require that I grant his motion.

In addition, Cooper has not explained how, if at all, the officers' conduct overbore his will and coerced him to confess. Instead, he relates the events of February 6 and 7 and then states that he "answered the officers' questions" and "wrote a statement." Cooper Decl. ¶¶ 2–10. By failing to explain how the circumstances during his interview coerced him to confess, Cooper has failed to raise a contested issue of material fact. *See Calvente*, 2013 WL 4038952, at *3 ("To raise a contested issue of material fact, [defendant] must allege how he was pressured and what promises of leniency he received, as well as how those circumstances coerced him to confess."); *Tavarez*, 2008 WL 2775810, at *5 (upholding on habeas review a finding that statement was voluntary when defendant did not provide link between detective's comment and defendant's ensuing statement); *cf. United States v. Mathurin*, 148 F.3d 68, 69–70 (2d Cir. 1998) (finding defendant's bare claim that he never received *Miranda* warnings sufficient to create factual dispute because giving *Miranda* warnings is a "discrete observable act[]," while involuntariness depends on "characterization of a set of circumstances"). Thus, I decline to hold an evidentiary hearing.

## CONCLUSION

For the reasons stated in this opinion, the defendant's motion to suppress is denied without a hearing.

SO ORDERED.

                                                          _/s/_____
                                                          Allyne R. Ross
                                                          United States District Judge

Dated:    September 12, 2019
             Brooklyn, New York