UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>— against —<br><br>CORNALIOUS COOPER,<br><br>Defendant. | 19-cr-159 (ARR)<br><br>**Opinion & Order**<br><br>**Not for electronic or print publication** |

ROSS, United States District Judge:

Defendant Cornalious Cooper is charged with assaulting a federal officer. The government moved *in limine* to admit certain hearsay statements that the federal officer made after the alleged assault. The government subsequently moved *in limine* to preclude the defendant from introducing his own hearsay statements at trial. The defense opposes both motions. For the reasons set forth below, the government's first motion is granted in part and denied in part. The government's second motion is granted in part and denied in part.

## BACKGROUND

The government alleges that at approximately 11:40 at night on January 22, 2019, defendant Cornalious Cooper was driving westbound on the Belt Parkway, erratically and at a rate of speed exceeding 100 miles per hour. Government's Mot. *In Lim*. 1, Oct. 1, 2019, ECF No. 32 ("Gov't First MIL"); Government's Letter Regarding Radio Runs 1, Oct. 17, 2019, ECF No. 42 ("Gov't Letter RR"). At the same time, United States Park Police Officer Robert O'Brien was driving on the Belt Parkway on his way from one federal park to another. Gov't First MIL 1. O'Brien saw Cooper's erratic and speedy driving and began to follow him. *Id.* Cooper exited the parkway and stopped behind a stationary vehicle at a red light. *See id.* at 2; Gov't Letter RR 1.

1

While Cooper was stopped on the exit ramp, O'Brien pulled up next to Cooper's car and ordered Cooper to turn off his engine and show the officer his hands. Gov't First MIL 2; Gov't Letter RR 1.[1] When Cooper did not comply, O'Brien left his vehicle, walked directly in front of Cooper's car, and again directed Cooper to raise his hands. Gov't First MIL 2. Cooper's car then "lurched forward" and hit O'Brien, prompting O'Brien to draw his firearm. *Id.* Cooper then accelerated, and his car made contact with O'Brien's leg and ran over his foot. *See id.* O'Brien was not injured. *Id.* At this point, it was 11:48 or 11:49 PM. *See* Gov't Letter RR 1.

Next, Cooper drove back onto the Belt Parkway, this time heading east. *Id.* O'Brien drove toward the eastbound parkway's entrance ramp in order to follow Cooper. *Id.* O'Brien headed east on the parkway and, at some point losing sight of Cooper's car, exited onto an overpass to try to obtain a better view. *Id.* at 1–2.

Beginning at 11:49 PM—which the government claims was between approximately thirty seconds and one minute after Cooper hit O'Brien with his car[2]—O'Brien initiated a series of "radio runs," or radio reports to his dispatcher. Gov't First MIL 2; Gov't Letter RR 1. According to the government, O'Brien began the first radio run as soon as he returned to his vehicle after Cooper hit him, and he spoke to his dispatcher while he was driving toward the parkway's eastbound entrance ramp in pursuit of Cooper. Gov't Letter RR 1. On this first radio run, O'Brien stated "[j]ust tried to pull over New York Tags [JCS]8861 in a black hatchback. Subject tried to attempt to hit me. He's now driving east on Belt Parkway, east of Rockaway Parkway." *Id.*; Audio Tape: O'Brien's Radio Runs (Jan. 22, 2019) (on file with the government) ("AT"). At 11:51 PM, O'Brien

---

[1] While the government's submissions do not make clear precisely where Cooper and O'Brien were at this point, the government indicated at the last conference that O'Brien will testify that they were on the exit ramp.

[2] One sentence prior, the government refers to the "hit" as "ma[king] contact with." Gov't First MIL 2.

2

stated over the radio "[b]e advised lost sight of the vehicle. Subject [was making] speed in excess of 100 miles per hour. East bound Belt Parkway." *See* Gov't Letter RR 1; AT. When he made this statement, O'Brien had exited the parkway and was on the overpass. Gov't Letter RR 1–2. Finally, at 11:52 PM, O'Brien stated "[c]ode 60. Subject struck me in the right leg." Gov't Letter RR 2; AT.[3] At this point, O'Brien was driving in the neighborhood surrounding the exit that he had taken from the parkway. Gov't Letter RR 2. O'Brien made this radio run so that the dispatcher would have a clear idea of what had happened. *Id.* In between each of O'Brien's three statements, there were periods of silence and unintelligible chatter from the dispatcher. AT.

O'Brien did not catch up with Cooper that night, and Cooper was not arrested until February 7, 2019. *See* Government's Mot. *In Lim.* 1, Oct. 17, 2019, ECF No. 43 ("Gov't Second MIL"). After his arrest, Cooper spoke with two Park Police agents, including Investigator Manuel Fajardo. *See id.* According to the government, Cooper orally confessed to driving the car and fleeing the scene of the alleged incident. *See id.* Cooper further stated that he knew during the incident that the person standing in front of his car was a law enforcement officer. *See id.* Cooper also stated that when the officer banged on his car and drew his firearm, Cooper feared for his life, and he fled for that reason. *See id.* He denied knowing that he hit the officer. *See id.*

Cooper subsequently wrote and signed a statement. *See id.* In its entirety, that statement reads:

> I was driving home I take the belt Parkway to exit at erskin but while i was driving a red car was tailing me a few times he got real close my car had gotten stolen befor in the past I got scared an ran from him. I had took an Exit and a officer pulled on the side of me At first I didn't know he was pulling me over in till A drew his gun he hit my hood and told me to get out I was aready scared from Runnig from the first Red car wen I saw the gun I Just Ran when I finaly got

---

[3] "Code 60" was O'Brien's report that he had drawn his firearm. Gov't Letter RR 2 n.1.

> home in my mind I was telling myself I was't not thinking Right I
> am sorry for everything

Gov't Second MIL Attach. 1, ECF No. 43-1. Investigator Fajardo will testify at trial, and the government may seek to elicit testimony from him that: (1) Cooper orally admitted he was driving his car on January 22; (2) Cooper realized that the person who banged on his car was a law enforcement officer; and (3) Cooper fled. Gov't Second MIL 2. The government may also seek to admit a redacted version of Cooper's written statement that would omit all of the words that follow "[he] drew his gun he hit my hood and told me to get out." Gov't Second MIL Attach. 2, ECF No. 43-2. Thus, the government seeks to exclude "both oral and written statements from the defendant that justify his actions, such as that he was scared because a car was previously chasing him, his denial that he hit the officer, and that he was sorry for his actions." Gov't Second MIL 2.[4]

## DISCUSSION

The government seeks to admit the audio recording of O'Brien's radio run hearsay statements as present sense impressions or excited utterances. Cooper opposes, arguing that the radio runs do not fall within either exception to the general rule against admitting hearsay statements and that admitting the tape would be unduly prejudicial to him. The government further seeks to preclude Cooper from introducing certain of his own hearsay statements at trial. Cooper opposes, relying on the rule of completeness. I will address each of these matters in turn.

A. <u>O'Brien's Radio Run Hearsay Statements</u>

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless it falls within an exception to that

---

[4] I note that while here the government implies that Cooper denied that he hit O'Brien, earlier in its submission the government writes that Cooper denied *knowing* that he hit the officer. Gov't Second MIL 1.

4

rule. Fed. R. Evid. 802. One exception is that regarding present sense impressions. A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" and is "not excluded by the rule against hearsay." Fed. R. Evid. 803(1). To qualify as a present sense impression, a hearsay statement must satisfy three conditions: (i) "the statement must describe or explain the event perceived"; (ii) "the declarant must have in fact perceived the event described"; and (iii) "the description must be substantially contemporaneous with the event in question." *United States v. Mejia-Valez*, 855 F. Supp. 607, 613 (E.D.N.Y. 1994) (internal quotation marks omitted).

In this case, the parties dispute whether the third condition—the contemporaneity requirement—is satisfied. The present sense impression exception recognizes that sometimes "precise contemporaneity is not possible and hence a slight lapse is allowable." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. However, the exception requires "substantial contemporaneity" in order to "negate the likelihood of deliberate or conscious misrepresentation." *Id.*

The rule against hearsay also does not exclude an excited utterance, or "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). For a statement to qualify as an excited utterance, (i) there must have been a startling event; and (ii) the declarant must have made the statement "during the period of excitement, and in reaction to that event." *Mejia-Valez*, 855 F. Supp. at 614. The rationale behind the excited utterance exception differs from that behind the present sense impression exception. While with present sense impressions it is contemporaneity that decreases the likelihood of misrepresentation, with excited utterances it is "the excitement of the event" that "limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its

reliability." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998). Accordingly, "[a]n excited utterance need not be contemporaneous with the startling event to be admissible." *Id.* Rather, the analysis turns on whether the declarant remained in a state of excitement when he spoke. *See id.* at 128 (finding statement was excited utterance when declarant's excitement had not subsided when he spoke). Thus, "[t]he length of time between the event and the utterance is only one factor to be taken into account" in deciding whether the declarant was "under the stress of excitement" when he made the statement. *United States v. Scarpa*, 913 F.2d 993, 1017 (2d Cir. 1990). The trial court determines "the existence of excitement and the applicability of this exception" pursuant to Rule 104(a). *United States v. Obayagbona*, 627 F. Supp. 329, 338 (E.D.N.Y. 1985); *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible" and is "not bound by evidence rules, except those on privilege.").

1. *O'Brien's First Statement*

O'Brien's first statement is admissible as a present sense impression and an excited utterance.[5] On his first radio run after Cooper allegedly hit him with his car, O'Brien states "[j]ust tried to pull over New York Tags [JCS]8861 in a black hatchback. Subject tried to attempt to hit me. He's now driving east on Belt Parkway, east of Rockaway Parkway." Gov't First MIL 2; AT.

This statement is a present sense impression. It clearly describes an event that O'Brien in fact perceived—his own attempt to pull over Cooper, Cooper's alleged attempt[6] to hit O'Brien, and Cooper's subsequent flight. The statement is also substantially contemporaneous with the event described. The statement itself conveys immediacy, as O'Brien states that he "just" tried to

---

[5] This ruling assumes that O'Brien will lay the proper foundation by testifying consistently with the facts that the government presented in its submissions.
[6] While I refer to the event as an "attempt" to hit O'Brien because that is how O'Brien describes the event on the first radio run, I note that O'Brien now claims that Cooper did, in fact, hit him.

6

pull over Cooper's car and sounds out of breath as he speaks. *See United States v. Scott*, No. 14–cr–494 (SAS), 2014 WL 6765960, at *1 (S.D.N.Y. Nov. 28, 2014) (finding statement was present sense impression when declarant stated someone had "just" pulled gun on him and sounded out of breath); AT.

Further, O'Brien will testify that he made this statement approximately thirty seconds to one minute after Cooper hit him and as soon as O'Brien returned to his own vehicle. Gov't Letter RR 1. O'Brien could not have initiated the radio run any earlier, as presumably his radio was in his vehicle. Because O'Brien spoke at his first opportunity, his statement satisfies the substantial contemporaneity requirement. *See Mejia-Valez*, 855 F. Supp. at 613 (finding contemporaneity requirement satisfied when declarant made statements on phone call placed when he found first available telephone after emergency); *Obayagbona*, 627 F. Supp. at 334, 340 (finding contemporaneity requirement satisfied when undercover federal agent declarant could not have made statement earlier because defendant was present, even though about fourteen minutes had passed since the event described).

This statement is also an excited utterance. O'Brien's interaction with Cooper was a startling event, and he made his statements in reaction to that event. *See United States v. Harrison*, No. 95–1678, 1996 WL 289986, at *2; 101 F.3d 686 (2d Cir. 1996) (unpublished table decision) (finding police transmission was excited utterance when officer made transmission while alone late at night after stopping a driver and discovering he had sawed-off shotgun). Thus, the analysis turns on whether O'Brien was in a state of excitement when he spoke. O'Brien was audibly out of breath when he made this statement. *See* AT. Further, Cooper had allegedly just hit him with a car about thirty seconds to one minute earlier, and between that hit and the end of O'Brien's statement, O'Brien had begun pursuing Cooper back onto the parkway. *See* Gov't Letter RR 1. These

7

circumstances indicate that O'Brien was excited when he spoke. *See Tocco*, 135 F.3d at 128 (finding statement was excited utterance when declarant's demeanor was "all hyped" and "nervous" even though three hours had passed since startling event); *Mejia-Valez*, 855 F. Supp. at 614 (finding "sheer panic" in voice of declarant proved declarant spoke while under excitement); *Obayagbona*, 627 F. Supp. at 338–39 (finding audio recording of statement showed declarant was excited when his voice was "exultant").

Thus, O'Brien's first statement is admissible as a present sense impression and an excited utterance.

### 2. *O'Brien's Second Statement*

O'Brien's second statement is not admissible as a present sense impression or an excited utterance. At 11:51 PM, O'Brien stated "[b]e advised lost sight of the vehicle. Subject [was making] speed in excess of 100 miles per hour. East bound Belt Parkway." *See* Gov't Letter RR 1; AT. When he made this statement, O'Brien had exited the parkway and was on an overpass looking for Cooper's car. Gov't Letter RR 1–2.

This statement is not a present sense impression because the government has not shown contemporaneity. Based on the statement itself and the government's explanation of the surrounding circumstances, it is not clear whether O'Brien just lost sight of Cooper's car at that very moment, or whether he lost sight of the car earlier. All the government claims is that by the time O'Brien made his first statement he had begun pursuing Cooper, and that by the time O'Brien made his second statement, O'Brien had already exited the Belt Parkway at the next exit and was on the overpass overlooking the parkway. Gov't Letter RR 1–2. At what point O'Brien became unable to see Cooper's car is not apparent. Thus, O'Brien might have had time to reflect and fabricate, a danger that the contemporaneity requirement guards against. *See* Fed. R. Evid. 803

advisory committee's note to 1972 proposed rules. *Mejia-Valez* is distinguishable. There, the court concluded that a phone call placed over sixteen minutes after the event described satisfied the contemporaneity requirement because the declarant lacked "any motivation for fabrication." *Mejia-Valez*, 855 F. Supp. at 614. The caller's description of the event was consistent with his own description in an earlier phone call that he had made and with other testimony. *See id.* O'Brien, on the other hand, did not describe losing sight of Cooper's car or the rate of speed at which Cooper was driving in his first radio run. Because O'Brien was the only eyewitness to the events of that night, no one else's testimony will corroborate O'Brien's statement. Nor has the government set forth any other circumstances to guarantee that O'Brien lacked a motivation to fabricate.

Similarly, the statement is not admissible as an excited utterance because the government has not shown that O'Brien was in a state of excitement when he spoke. While the audio recording reveals that O'Brien might have remained slightly out of breath when he made this statement—it is difficult to tell—this possibility is not enough to guarantee against fabrication. O'Brien's voice was not "all hyped," "nervous," *Tocco*, 135 F.3d at 128, or conveying a state of "sheer panic," *Mejia-Valez*, 855 F. Supp. at 614. And the government has set forth no other facts to suggest that O'Brien was excited. Whether a law enforcement officer would be in a state of excitement after pursuing a suspect and stopping on an overpass is not evident; perhaps such a course of action is routine and unexciting. Thus, O'Brien's second statement is not admissible as a present sense impression or an excited utterance.

### 3. O'Brien's Third Statement

For largely the same reasons, O'Brien's third statement is also not admissible as a present sense impression or an excited utterance. In this third statement, O'Brien says "[c]ode 60. Subject struck me in the right leg." Gov't Letter RR 2; AT. O'Brien made this statement anywhere from

9

approximately three to three and a half minutes after Cooper allegedly hit his leg with his car. *See* Gov't Letter RR at 1–2.

Here, again, the government has not set forth any circumstances to suggest that the contemporaneity requirement of the present sense impression exception is satisfied. When courts have admitted statements as present sense impressions despite substantial lapses in time after the event described, they have done so because the circumstances indicated that certain guarantees of trustworthiness were in place. *See Mejia-Valez*, 855 F. Supp. at 614 (finding contemporaneity requirement satisfied when declarant made statement more than sixteen minutes after event because statement was consistent with declarant's earlier statement and other testimony); *Obayagbona*, 627 F. Supp. at 334, 339–40 (finding statement made over fourteen minutes after event satisfied contemporaneity requirement when circumstances showed motivation to fabricate was unlikely because other observer of event was present during statement and could have corrected any misrepresentation). Here, not only are any guarantees of trustworthiness absent, but a motivation to fabricate is, in fact, apparent in O'Brien's statement. O'Brien states that Cooper struck his leg, but in his first statement, O'Brien stated that Cooper *tried to* hit him.

Nor has the government established that O'Brien made this statement in an excited state. By this point on the audio recording, O'Brien no longer sounds out of breath. AT. The government has set forth no other facts besides those on the tape itself that could suggest excitement. In fact, the circumstances suggest that O'Brien had the opportunity to reflect before making this statement, undermining the government's contention that the statement was an excited utterance. *See* Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules ("[t]he theory of [the excited utterance exception] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."). By stating

10

"[c]ode 60," O'Brien reported to the dispatcher that he had drawn his firearm. Gov't Letter RR 2 n.1. O'Brien therefore had sufficient opportunity to reflect to realize that he should make a report of such an occurrence. Further, the government explains that O'Brien made this third radio run so that the dispatcher would have a clear understanding of what had happened. Gov't Letter RR 2. This explanation suggests that O'Brien, motivated by a desire to put together a narrative, was relating an earlier event to a colleague rather than blurting out words in a state of excitement. Thus, O'Brien's third statement is not admissible as a present sense impression or an excited utterance.

    *4. Rule 403*

Cooper argues that to the extent that any of O'Brien's radio run statements fall within exceptions to the rule against hearsay, they are inadmissible because they do not satisfy Rule 403. This argument fails.

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice." Fed. R. Evid. 403. Cooper argues that O'Brien's statement "[s]ubject tried to attempt to hit me"—part of his first radio run—presents a danger of unfair prejudice that substantially outweighs the statement's probative value. Def.'s Resp. to Gov't First MIL 3, Oct. 7, 2019, ECF No. 36. According to Cooper, this statement "is opinion testimony about Mr. Cooper's intent" and involves "an ultimate issue of fact for the jury." *Id.* For that reason, Cooper argues, it is unduly prejudicial. *See id.*

The only authority that Cooper cited in support of this contention is inapposite. *See id.* In *United States v. Awadallah*, a prosecution for knowingly making false statements, the United States Court of Appeals for the Second Circuit upheld the trial court's exclusion of grand juror testimony under Rule 403. *See* 436 F.3d 125, 127, 132 (2d Cir. 2006). The defendant's defense was that he did not make any false statements knowingly but rather because he was confused. *See*

11

*id.* at 127. The grand jurors would have testified as to whether or not the defendant appeared confused when he testified before them. *See id.* The district court determined that the grand juror testimony had limited probative value because the government could have called other witnesses instead and that the danger of unfair prejudice was high because the trial jurors might have deferred to the grand jurors' determination as to the defendant's state of mind. *See id.* at 132–33. *Awadallah* turned on the fact that the government's proposed witnesses were grand jurors, whose testimony as to an ultimate issue could have unduly influenced the trial jurors. *See id.* at 132–34. O'Brien is not a grand juror, and, therefore, admitting his first statement does not pose the same danger. O'Brien's statement also has more probative value for the government than did the proposed testimony in *Awadallah*, as O'Brien's radio run is the only near-contemporaneous account of what happened. Therefore, the danger of unfair prejudice does not outweigh the statement's probative value.

Thus, O'Brien's first statement is admissible. His second and third statements are inadmissible hearsay.

B. Cooper's Statements

The government plans to introduce portions of Cooper's post-arrest oral and written statements and seeks to exclude the portions of those statements "that justify his actions, such as that he was scared because a car was previously chasing him, his denial that he hit the officer, and that he was sorry for his actions." Gov't Second MIL 1–2. If the government introduces any portions of Cooper's statements at trial, Cooper seeks the admission of all of his surrounding statements that the government seeks to exclude. *See* Def.'s Resp. to Gov't Second MIL 1, Oct. 18, 2019, ECF No. 47.

The rule against hearsay would not bar the government from introducing Cooper's statements because "[a] statement . . . offered against an opposing party and . . . [that] was made by the party" is not hearsay. Fed. R. Evid. 801(d)(2)(A). However, the rule against hearsay would bar Cooper from introducing his own out-of-court statements offered to prove the truth of the matter asserted. *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).

Despite the general rule against hearsay, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part— or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (the "rule of completeness"). Rule 106 requires "that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact." *Marin*, 669 F.2d at 84. The Rule further requires admission of a statement in its entirety "to ensure a 'fair and impartial understanding' of the admitted portion." *Id.* (quoting *United States v. Capaldo*, 402 F.2d 821, 824 (2d Cir. 1968)). However, "[t]he completeness doctrine does not . . . require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Marin*, 669 F.2d at 84.

"For practical reasons, the rule is limited to writings and recorded statements and does not apply to conversations." Fed. R. Evid. 106 advisory committee's note to 1972 proposed rules; *see also United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987) ("Rule 106 governs only writings."). However, historically, courts "have required a party offering testimony as to an utterance to present fairly the substance or effect and context of the statement." *Castro*, 813 F.2d at 576 (internal quotation marks and citation omitted). That is, "while verbal precision may be unnecessary, the testimony 'should at least represent the tenor of the utterance as a whole, and not mere fragments of it.'" *Id.* (internal quotation marks and citation omitted).

13

Rule 611(a) also "empowers and obligates the district court to take account of these considerations" with respect to oral statements. *Id.*[7] Accordingly, the Second Circuit has recognized that a principle similar to that embodied in the Rule 106 rule of completeness governs when redaction of oral statements is involved. *See id.* ("[W]hether we operate under Rule 106's embodiment of the rule of completeness, or under the more general provision of Rule 611(a), we remain guided by the overarching principle that it is the trial court's responsibility to exercise common sense and a sense of fairness to protect the rights of the parties while remaining ever mindful of the court's obligation to protect the interest of society in the 'ascertainment of the truth.'" (quoting Fed. R. Evid. 611(a))). The Second Circuit has also noted that with respect to oral statements, the completeness principle "is violated only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." *United States v. Alvarado*, 882 F.2d 645, 651 (2d Cir. 1989), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). In short, similar considerations guide the completeness analysis for both oral and written statements.

1. *Cooper's Oral Statements*

The government plans to admit the portions of Cooper's post-arrest oral statements wherein he confessed to driving his car, fleeing the scene, and knowing that the person who stood in front of his car was a law enforcement officer. Gov't Second MIL 2. It seeks to exclude Cooper's oral statements to the effect that (1) he fled because he feared for his life after O'Brien banged on his car and drew his firearm, and (2) he denied knowing that he hit (or denied that he hit) the officer

---

[7] Rule 611(a) instructs the district courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a).

14

with his car. Gov't Second MIL 1–2. The government's request to admit only portions of Cooper's oral statements while omitting others is denied.

The first oral statement that the government seeks to exclude is relevant to and explanatory of the oral statement that it plans to admit wherein Cooper confessed to fleeing the scene, and it is also potentially exculpatory. Cooper allegedly confessed to fleeing and explained that he fled because he feared for his life. This explanation is probative of his state of mind at the time of his actions—fearful. Redaction would distort the meaning of Cooper's confession to fleeing. Without Cooper's explanation as to why he fled, the jury may well infer that he fled out of consciousness of guilt or for some nefarious reason. Cooper's explanation provides important context and ensures that the jury receives a "fair and impartial" understanding of Cooper's statements. *Marin*, 669 F.2d at 84 (quoting *Capaldo*, 402 F.2d at 824).

The second oral statement that the government seeks to exclude goes to a central element of the felony charge that the government has brought against Cooper. Cooper allegedly denied hitting, or knowing that he hit, O'Brien. In order to be guilty of a felony under 18 U.S.C. § 111, Cooper's actions must have "involve[d] physical contact" with O'Brien. 18 U.S.C. § 111 (2018). Thus, the statement that the government seeks to exclude is highly probative of the crux of the felony charge. It is also explanatory of and inextricable from the remainder of Cooper's oral statements because it presents Cooper's view of what happened immediately before he fled. Cooper's oral statements all involve the same brief, isolated event. They are not segregable by time, place, or topic. *Cf. United States v. Johnson*, 507 F.3d 793, 796–97 (2d Cir. 2007) (finding no abuse of discretion in redaction of confession when redacted and admitted portions related to conduct occurring at distinct times and places and logically distinguishable topics). Nor are they discrete, general proclamations of innocence with no explanatory value. *Cf. United States v. Hill*,

658 F. App'x 600, 604–05 (2d Cir. 2016) (finding no abuse of discretion in admitting portions of defendant's phone calls while excluding defendant's remarks on same calls that he was "innocent"). To allow the government to introduce Cooper's statements to the effect that he was driving his car and fled the scene, while omitting Cooper's only statements regarding what did or did not happen in between, would be to skew the overall tenor of Cooper's comments toward the more inculpatory, depriving the jury of a fair and impartial view of Cooper's words.

2. *Cooper's Written Statement*

The government plans to introduce Cooper's written statement and seeks to redact all of the words that appear after "[he] drew his gun he hit my hood and told me to get out." *See* Gov't Second MIL Attach. 2. That is, the government seeks to exclude "I was [already] [scared] from [running] from the first Red car [when] I saw the gun[.] I Just Ran when I [finally] got home in my mind I was telling myself I [was] not thinking Right I am sorry for everything[.]" *Id.*; Gov't Second MIL Attach. 1. The government's request is granted in part and denied in part.

The government may redact "when I [finally] got home in my mind I was telling myself I [was] not thinking Right I am sorry for everything[.]" This portion of Cooper's written statement is not necessary to explain the rest of the statement, contextualize it, or avoid misleading the jury. *See Marin*, 669 F.2d at 84. It describes Cooper's state of mind only when he returned home after the event at issue and weeks later, at the time of his interview with Investigator Fajardo.

However, the government may not redact "I was [already] [scared] from [running] from the first Red car [when] I saw the gun[.] I Just Ran[.]" As discussed, Cooper's statements that he fled because he was afraid are probative of his state of mind and necessary to provide the jury with a fair view of his statements. In addition, the government has not sought to redact the earlier reference to the red car in Cooper's written statement, making this second reference to the red car

16

relevant to and explanatory of the earlier part of the statement. Thus, the government's request to redact Cooper's written statement is granted in part and denied in part.

## CONCLUSION

The government's motion *in limine* to admit O'Brien's radio runs is granted in part and denied in part. The government may introduce O'Brien's first radio run, but his second and third radio runs are inadmissible hearsay. The government's motion *in limine* to exclude certain portions of Cooper's oral and written statements, while admitting other portions of those statements, is granted in part and denied in part. The government may not omit Cooper's oral statements. It may redact "when I [finally] got home in my mind I was telling myself I [was] not thinking Right I am sorry for everything" from Cooper's written statement, but not "I was [already] [scared] from [running] from the first Red car [when] I saw the gun[.] I Just Ran[.]"

SO ORDERED.

\_/s/_____
Allyne R. Ross
United States District Judge

Dated: October 22, 2019
Brooklyn, New York